**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 04-38603 |
| | ) | |
| Steve M. Tobis and Kathleen Tobis, | ) | Chapter 7 |
| | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION RE ATTORNEY FEE ISSUES

This case is before the court for decision on Eastman & Smith Ltd.'s ("Applicant") Application for Final Compensation of Attorneys for the Trustee [Doc. # 169]. The application seeks approval of payment from the bankruptcy estate of attorney's fees of $9,726.08 and expenses of $63.45. There is a lengthy procedural background to the application.

Debtors Steve M. Tobis and Kathleen Tobis ("Debtors") commenced a joint Chapter 7 liquidation case in this court on October 13, 2004.[1] Patricia A. Kovacs ("the Trustee") was appointed as the Chapter 7 trustee. Among the assets listed on Debtors' "Schedule B. Personal Property" was a claim against Medical Mutual of Ohio ("MMO"). At Item 20 of their Schedule B Debtors stated as follows: "Claim vs. Medical Mutual of Ohio based upon a termination fo [sic] benefits. Status: Awaiting pre trial date, Mark Davis aty

---

[1]Debtors commenced this case before the October 17, 2005, effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Consequently the citations to the Bankruptcy Code in this decision are to the Bankruptcy Code as in effect prior to BAPCPA.

[sic] for Plaintiff." [Doc. #1]. The MMO claim was not separately identified in Debtors' Statement of Financial Affairs, in response to Question 4, as being the subject of an ongoing lawsuit to which Debtors were a party during the year preceding the filing of the bankruptcy case. [*Id.*]. However, the lawsuit was pending in an Ohio state court as Case No. CI02-1372 at the time the Chapter 7 case was commenced, and had been filed on January 28, 2002. [*See* Doc. ## 14, 15, 78]. The pending state court lawsuit had a complex procedural history of its own, having been removed to federal court and remanded, subject to an appeal and also apparently included claims of a minor and entities in which Debtors had an interest. [*See* Doc. ## 45, 112]. Attorney Mark Davis was representing the plaintiffs, including Debtors, in the state court proceedings on the MMO claim. Davis was never appointed by this court as an attorney for the Trustee under 11 U.S.C. 327(e).

On March 3, 2006, the Trustee filed in this court a motion for authority to compromise the claims against MMO for $15,000. [Doc. # 14]. On March 6, 2006, Davis filed an objection to the proposed compromise on behalf of Debtors. [Doc. # 15]. Attorney James Irmen ("Irmen") was employed as counsel for the Trustee to evaluate the first proposed compromise of the MMO claims. The Trustee eventually withdrew the motion to approve the compromise of the MMO claim on August 15, 2006. [Doc. # 70]. Also, on August 15, 2006, the Trustee filed a motion to intervene in the state court proceedings against MMO and substitute herself as a party plaintiff for Debtors. [See Doc. # 145, p.12 of 15]. That motion was granted by the state court on September 8, 2006. [*Id.*, p. 13 of 15].

On October 6, 2006, the Trustee filed an application for court approval to employ attorney Stuart J. Goldberg and the Applicant law firm to represent her for the limited purpose of litigating the state court claims against MMO. [Doc. # 82]. This court granted the application and authorized Goldberg's employment on October 23, 2006. [Doc. # 85]. The court's order approved his employment on the terms in the application, which set forth a contingency fee arrangement "at the rate of 33 1/3% after expenses." [Doc. ## 82, 85].

Also shortly after the Trustee withdrew her motion for approval of the $15,000 compromise with MMO, Davis filed a motion in this court seeking for the second time to prohibit the Trustee from pursuing the MMO claims in state court on behalf of the bankruptcy estate. [Doc. # 76, 78]. Davis filed the motion on behalf of Debtors. [*Id.*]. The basis for the second motion was that the state court had determined that the claims against MMO involved recovery of an ERISA plan benefit and therefore never became property of the bankruptcy estate due to the exclusion of 11 U.S.C. § 541(c)(2). This court denied Debtors' motion on April 11, 2007, finding that the MMO claims involved an ERISA employee welfare benefit plan, not an

2

ERISA-qualified pension benefit plan that might arguably be excluded from the estate, and that they were property of the bankruptcy estate thereby subject to administration by the Trustee. [Doc. # 112].

Thereafter, the Trustee filed in this court on February 27, 2008, a second motion for approval of a compromise of the estate's claims against MMO in the state court. [Doc. # 163]. The proposed compromise required MMO to pay the Trustee $29,178.24 in exchange for release of the estate's and the Tobis' claims against MMO. After the motion notice period expired without any objections to the proposed compromise being filed, the court entered an order on March 25, 2008, granting the motion and approving the Trustee's second proposed settlement of the MMO claims. [Doc. # 164].

After bankruptcy court approval of the estate's settlement with MMO, Applicant filed its final fee application. [Doc. ## 166, 169]. Applicant's fee application seeks approval and authorization for payment of an attorney fee of $9,726.08 and expenses of $63.45. [*Id.*]. The fee was calculated as one third of the $29,178.24 gross settlement proceeds from the Trustee's compromise generally as set forth in the employment application.[2]

Applicant's fee application prompted another fee filing by Davis. [Doc. ## 168, 169]. Davis' filing "joined" in Applicant's fee application, objected to payment of the entire requested fee to Eastman & Smith Ltd. on the grounds of reasonableness, and asserted that the fee should be split on a quantum meruit basis, with 90% of the total $9,726.08 amount to be paid to Davis and 10% to be paid to Eastman & Smith Ltd..

The court addressed the four issues it construed as being raised by Applicant's fee application and Davis' filings relating to both his own fees and Eastman & Smith Ltd.'s requested fees in a memorandum of decision [Doc. # 180] and in three separate orders [Doc. ## 181-183] entered on October 10, 2008. With respect to Eastman & Smith Ltd.'s fee application, the court determined under the authority of *Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915 (6th Cir. 2004), that its compensation was <u>not</u> pre-approved by the court under 11 U.S.C. § 328(a). The significance of pre-approval under § 328(a) is that reasonableness of the fee and the basis of the fee is determined in advance of services being rendered, *id.* at 920-21, and compensation may allowed on a basis different than that pre-approved only "if such terms

---

[2]The contingent fee amount requested in the fee application was calculated as 1/3 of the settlement proceeds before deduction of expenses while the Trustee's application to employ Applicant specified that the fee would be at the rate of "33 1/3 % after expenses." The court interprets this language as requiring the 1/3 contingent fee amount to be calculated <u>after</u> the expenses are deducted from the gross settlement proceeds, not before. Calculating the fee on that basis, the proper fee amount based on application to approve his employment ($29,178.24 minus $63.45= $29,114.79) ÷ 3, or $9,704.93 in fees, plus $63.45 in expenses, instead of the $9,726.08 requested in the final fee application.

3

and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions," 11 U.S.C. § 328(a). This is a strict standard in its application, with essentially extraordinary or unusual circumstances required before a court can depart from the pre-approved compensation after services have been rendered. *See In re Smart World Technologies, LLC*, 552 F.3d 228, 234-35 (2d Cir. 2009).

Having decided that Applicant was employed under 11 U.S.C. § 327 and that its compensation and the reasonableness thereof was not pre-approved under § 328(a), the court determined that it was still required to determine the reasonableness of the requested fee under 11 U.S.C. § 330(a) after the rendition of legal services to the estate. As the existing application was presented only on the contingency fee calculation that was not pre-approved by the court, the court lacked a record from which such a determination could be made. The existing application did not specify the services rendered to the Trustee in prosecuting the MMO claims, the time spent on services to the Trustee on the MMO claims and the hourly rate(s) that would otherwise be applicable to the services rendered. *See* Fed. R. Bankr. P. 2016(a). The court entered two separate orders directing Applicant to file the documentation and information that would enable the court to evaluate the application post-service under § 330(a). [Doc. ## 181, 190]. Applicant has filed the supporting documentation itemizing the services rendered, the professionals rendering the services described, the time spent in rendering them and the rates charged by the professionals rendering the service. [Doc. ## 188, 192].

Section 330(a)(1) of the Bankruptcy Code generally governs "fees for services rendered by attorneys in connection with bankruptcy proceedings." *Lamie v. United States Trustee*, 540 U.S. 526, 529 (2004). Under § 330(a)(1)(A), the bankruptcy court may award reasonable compensation to "a professional person employed under section 327..." as an allowable administrative expense of the estate, 11 U.S.C. § 503(b)(2), entitled to priority in payment from the estate ahead of other lower priority claims and general unsecured claims, 11 U.S.C. §§ 507(a)(1) and 726(a)(1).

Specifically § 330(a) allows "reasonable compensation for actual, necessary services rendered by the...attorney and by any paraprofessional person employed by any such person" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A). In determining reasonableness the bankruptcy court "shall consider the nature, extent, and the value of such services, taking into account all relevant factors, including–":

>    (A) [*sic*] the time spent on such services;
>    (B) the rates charged for such services;

4

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
(E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A). On the other hand, the court shall not allow compensation for "unnecessary duplication of services" or services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(a)(4)(A). The issue before the court is whether the requested compensation is reasonable under this standard.

In *Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991), the Sixth Circuit mandated that the lodestar method be used to calculate fees in bankruptcy cases. The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Boddy*, 950 F.2d at 337. The professional seeking compensation bears the burden of proving entitlement to the requested compensation. *In re New Boston Coke Corp.*, 299 B.R. 432, 438 (Bankr. E.D. Mich. 2003).

The total fee as calculated by Applicant on a lodestar basis is $10,099.50, representing 44.40 hours of service at hourly rates for the professionals involved that ranged from $65 to $290, with hourly billing rates of $100, $155, $165, $260 and $275 in between. The professional primarily responsible for the engagement, Stuart J. Goldberg, performed 28 hours of the 44.40 hours of services at fees that started out at $260 per hour (10.20 hours) and that rose in the fall of 2007 to $275 per hour (14.60 hours) and in the fall of 2008 to $290 per hour (3.20 hours). The average hourly rate for the engagement was approximately $227 for services rendered from July 10, 2006, to October 13, 2008.

"A reasonable hourly rate is the prevailing market rate in the relevant market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *In re Williams*, 357 B.R. 434, 438-39 (6th Cir. B.A.P. 2007)(citing *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984)). The court notes that, in its prior memorandum of decision addressing the issues raised by the application and Davis' objections and fee requests, the court questioned without deciding whether his proposed hourly rate of $225 for litigating the early phases of the same lawsuit that became property of the estate was excessive. [Doc. # 180, p.13]. However, the fees in issue as determined by the court were only for the time period from 2001 to 2004, and the court questioned in particular whether that

hourly rate was excessive "at least during the earlier part of the time period from 2001 to 2004." [*Id.*]. The fees incurred by Applicant were for services rendered during the latter part of 2006 through the latter part of 2008 on behalf of the bankruptcy estate.

As have other courts, *see, e.g., Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 618 (6th Cir. 2007); *Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp. 2d 879, 876-77 (S.D. Ohio 2008); *FTSS Korea v. First Tech. Safety Sys., Inc.*, 254 F.R.D. 78, 81 (E.D. Mich. 2008), in the absence of other evidence, the court looks to and takes judicial notice of a published market survey, in this instance one published by the Ohio State Bar Association, as a resource to measure the hourly rates in question from the standpoint of the market. *See The Economics of Law Practice in Ohio Desktop Reference for 2007*, published by the Ohio State Bar Association, downloads.ohiobar.org.memrsrc/memben/pracrsrc/2007EoLS.pdf. The time period covered by the OSBA Desktop Reference for 2007 is directly relevant to the time period for the services in issue. By practice classification, Applicant is a firm with 8+ partners. The mean hourly billing rate for partners like Goldberg in like firms statewide was $274, and the median $260. The 25th percentile was $200, the 75th percentile $326 and the 95th percentile was $436. By practice area, bankruptcy hourly rates ranged from a median of $175 for Debtor work to $275 for creditor work and "trial practice, not PI (Commercial)" hourly rates reflected a median of $228. *Id.*, at p.21. By location, the mean hourly rate for Toledo was $188, the median was $180 and the range from $150 to $273 (95th percentile). *Id.*, at p.20.

The court also has extensive familiarity with attorney billing rates approved for payments from bankruptcy estates for professionals handling different types of work in and related to these bankruptcy estates. The range of fees is remarkable during this time frame, from $135 to approximately $235 by Chapter 7 trustees representing themselves, to fees exceeding $400 per hour for professionals from outside of Toledo but from other parts of Ohio for some Chapter 11 and creditor committee work. One of the matters pending in this court throughout the time period in issue involving a comparable local law firm, comparable professionals and comparable commercial litigation features fees approved at hourly rates similarly ranging from $220 to $300 for attorneys, with $275 for the professional most comparable to Goldberg, and $60 to $125 for legal assistants. *See In re Continental Capital Investment Services, etc.*, Bankr. N.D. Ohio Case No. 03-3370, Doc. ## 982, 983.

The court looks particularly to the overall average hourly rate of $227 for this engagement, reflecting proper delegation of services to the level of professional appropriate for the task, and the top average hourly rate of $271.25 charged by Goldberg as the lead professional, to measure overall reasonableness of the rates charged. Based on the relevant market survey, the limits of which the court

6

recognizes as have other courts, and its own familiarity and experience with the hourly rates charged and approved for payment by bankruptcy estates in this court, as well as the court's general familiarity with the the law firm and the lawyers involved in this matter, the court finds that the hourly rates appearing on Applicant's supplemental filings are individually and overall reasonable for the type of work involved, which required litigation skills as well as substantive expertise.

The second part of the lodestar calculation is the number of hours reasonably expended. Applicant's supplemental filing itemizes the services rendered, by description and time spent. Courts should exclude hours that are not reasonably expended. *See Hensley v. Eckerhart*, 461 U.S. 242, 433 (1983)(deciding fee petition under 42 U.S.C. § 1988). In determining whether hours are reasonable for purposes of an award of attorney's fees "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598 (2001).

The court finds Applicant's descriptions sufficiently detailed to apprise the court of the services involved, and does not find that any individual time entry is excessive to the task described. The court also notes that the services are itemized in increments of tenths of an hour, as required by the compensation guidelines adopted by General Order 93-1 of this court. The court finds, with one exception that will be addressed, that each service described was necessary at the time rendered to prosecute the MMO claims Applicant was hired to pursue for the benefit of the estate or to drive the claims toward a settlement more favorable to the estate than the $15,000 previously rejected by the Trustee. And while the measure of benefit to the estate is not strictly monetary, *In re Veltri Metal Products, Inc.*, 189 Fed. Appx. 385 (6th Cir., June 22, 2006), or even measured by success in hindsight, *In re Red Ball, Inc.,* 157 Fed. Appx. 850 (6th Cir., Dec, 5, 2005); 11 U.S.C. § 330(a)(3)(C), the court notes that the $10,099 in services rendered by Applicant resulted in a $14,000 improvement in the settlement previously rejected by the Trustee, for an incremental monetary benefit to the estate of approximately $4,000.

The exception in the court's view is the three hours of time spent on October 13, 2008, for a total of $870 in fees, or nearly 9% of the total time incurred, in drafting a supplemental brief after the entry of the court's October 13, 2008, memorandum of decision. Beyond the submission of the time records, these after the fact services were of no incremental benefit to the bankruptcy estate or to concluding the Trustee's approved settlement of the MMO claim. The filing of the brief was beyond the direction of the court's first order to supplement the record [Doc. # 181], so as to address the reasonableness of the fees requested under

7

§ 330(a). The self- described brief is a three page document that expresses disagreement with the court's application of the existing, binding Sixth Circuit precedent *Airspect Air,* familiarity with which the court would have hoped preceded October 10, 2008, to the unfortunately less than precisely drafted employment application [Doc. # 82] and order of approval of the employment application [Doc. #85]. So stipulated as to the expressed disagreement, but simply not a matter in issue at the time. The court cannot find that these services were reasonably expended at the time for the success of the bankruptcy estate and its administration. The filing of the supplemental information sought by the court in its two orders was a nearly ministerial action for which one half hour of time at $290 an hour would have been reasonably expended in furtherance of the requirements of administration of the estate and the directives of the court. The court therefore concludes that the number of hours reasonably expended was 41.90 hours, with 2.50 hours deducted for the reason explained.

The court concludes that the lodestar amount required by *Boddy* for purposes of evaluating the reasonableness of the requested fee is $9,374.50, calculated as $10,099.50 using the hourly rates determined by the court to be reasonable less 2.50 hours at $290 per hour.

After the lodestar figure is established, the additional factors set forth in the statute are examined, and compensation is adjusted accordingly to achieve the most reasonable result. *Geier v. Sundquist*, 372 F.3d 784, 792 (6th Cir. 2004) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). In considering other factors, the statute lists some of the relevant factors to be considered. 11 U.S.C. § 330(a)(A). In determining the lodestar figure, the court has already addressed all of the factors listed under § 330(a)(3)(A) except for "whether the services were performed within a reasonable amount of time..." 11 U.S.C. § 330(a)(3)(D). Applicant was engaged to represent a bankruptcy estate on a complex lawsuit that already had an extensive four year history that had been addressed by two other lawyers. The substance of Applicant's representation was conducted over the period of time from July 10, 2006, through the Trustee's filing of the second motion to compromise on February 27, 2008. That counsel did not start the litigation from scratch and had the work of prior lawyers to build upon was both a benefit and a burden in prosecuting the claims effectively at the point at which Applicant was engaged by the Trustee. Thus, the court finds that the time period within which Applicant's services were performed was reasonable under the circumstances at hand.

Beyond the inclusive list of relevant factors in the statute, courts often look to, and the Supreme Court has cited with approval, *Hensley*, 461 U.S. at 430, n.3, 434, n.9; *see Geier*, 372 F.3d at 792, the twelve factors in *Johnson*, 488 F.2d at 717-19, to be considered in evaluating whether an upward or

downward adjustment from the lodestar figure is necessary to reach a reasonable fee. As the Supreme Court has also noted, however, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434, n.9; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 578 U.S. 546, 565 (1986). And so it is in this case. Moreover, not all of the *Johnson* factors are necessarily relevant in the bankruptcy fee context (*e.g.* the nature and length of the professional relationship with the client). The court notes, however, that there is one *Johnson* factor that is relevant here and that has not yet been directly addressed in evaluating the reasonableness of Applicant's requested fee. That factor is "whether the fee is fixed or contingent."

The fee agreed to between the Trustee and Applicant, and authorized by the court although not pre-approved in the statutory sense of § 328(a), was a contingency fee. Federal courts are not necessarily bound by contingency fee arrangements in contexts requiring fee approval. *Cf. Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir. 1997). As it happens, however, and perhaps fortuitously so, the lodestar figure determined by the court is very nearly the same as what turned out to be the fee amount calculated under the fee agreement between the Trustee and Applicant. Thus this is not a case where, now in the position of having to evaluate the $9,704.93 fee amount (as properly calculated) for reasonableness after the fact, the contingency fee amount can be said to represent what might be described as a "windfall" to either the estate or to counsel. However, counsel assumed some risk of non-recovery, for while the contingency amount was not pre-approved and is subject to the instant § 330(a) reasonableness analysis after rendition of service, Applicant would not have been entitled to any fee at all had there been no recovery. Given the Trustee's previous rejection of a $15,000 settlement of the estate's MMO claims, the risk of complete non-recovery was not high. But it was a risk nonetheless. Because Applicant and the Trustee agreed to a contingency fee arrangement and the court approved it, and because the fee as properly calculated under their agreement is not materially different than the lodestar figure, the court finds it appropriate to award Applicant its slightly higher contingency fee amount as a reasonable fee in this particular case. The court acknowledges that this represents a minor upward adjustment in the lodestar figure that is presumptively reasonable, however, it is an upward adjustment that is appropriate for the reasons articulated. *See Boyd v. Engman*, Case No. 1:08-CV-617, 2009 U.S. Dist. LEXIS 16958, *25, *27, n.11 (W.D. Mich., Mar. 4, 2009). Accordingly, the court finds when all is said and done that the contingency fee amount of $9,704.93 (calculated as 1/3 of the settlement amount after expenses are deducted) is in fact reasonable professional compensation under 11 U.S.C. § 330(a).

In accordance with this opinion and its prior memorandum of decision, [*see* Doc. # 180], the court

04-38603-maw    Doc 196    FILED 04/01/09    ENTERED 04/01/09 11:29:07    Page 9 of 10

will enter a separate final order on  Eastman & Smith Ltd.'s ("Applicant") Application for Final Compensation of Attorneys for the Trustee [Doc. # 169], awarding  attorney's fees of $9,704.93  and expenses of $63.45. [3]

---

[3]No issue has been raised by Davis as to the reasonableness of the expenses requested.